Jonathan Shub (CA Bar #237708)
**KOHN, SWIFT & GRAF, P.C.**
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Tel: (215) 238-1700
Fax: (215) 238-1968
Email: jshub@kohnswift.com

[Additional Counsel Listed On Signature Page]

**Attorneys for Plaintiff and the Class**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

JOHN KAYDEN on behalf of himself
and all others similarly situated,

     Plaintiff,

v.

CREATIVE BIOSCIENCE
LABORATORIES, LLC, and
CREATIVE BIOSCIENCE, LLC

     Defendants.

_____/

Civil Action _____

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

     Plaintiff, John Kayden ("Plainiff"), through his undersigned counsel, brings this action on his own behalf and on behalf of a Class of persons and entities defined herein against Defendants, Creative BioScience Laboratories, LLC and Creative BioScience, LLC (collectively "Defendants") and, for his Complaint,

alleges, upon information and belief and based on the investigation to date of his counsel, as follows:

## **INTRODUCTION**

1.      This is a class action brought individually by Plaintiff and on behalf of a class of persons similarly situated, (the "Class" or "Classes" or "Class Members"), who purchased the weight-loss dietary supplement BioScience Laboratories Garcinia Cambogia 1234 (the "Product"). Defendants' efficacy claims for the Product are false and misleading. Defendants do not include the represented amount of the active ingredient, hydroxycitric acid ("HCA"), in the Product.

2.      Sales of retail diet pills, combined with meal replacements, are a billion-dollar industry in the United States annually.

3.      Defendants advertise, manufacture, market, sell and distribute the Product in the growing and extremely competitive diet/weight-loss dietary supplement industry as a highly effective appetite suppressant, fat burner, and weight-loss pill. Although Defendants boast about the Product's efficacy on their labeling and in their advertising, none of the promised benefits are or can be delivered by the Product.

4.    To make matters worse, Defendants only provide approximately 6.93% of the total amount of HCA they have claimed is in each serving of the Product on its label.

5.    In late 2012, Dr. Mehmet Oz ("Dr. Oz.") of the highly popular TV show, "The Dr. Oz Show," claimed on his website that Garcinia Cambogia was the "Newest, Fastest Fat-Buster" and that, "Thanks to brand new scientific research, I can tell you about a revolutionary fat buster" with the words "No Exercise. No Diet. No Effort" on the screen behind him.

6.    In June 2014, these representations regarding weight-loss products, including Garcinia Cambogia, were called into question by the United States Senate's Subcommittee on Consumer Protection, Product Safety, and Insurance, where Dr. Oz was called to testify.

7.    When presented with studies refuting the efficacy of Garcinia Cambogia, Dr. Oz testified that he could not be held responsible for what companies say about their products, that he had toned down some of his language, and that he would publish a list of products he believes can actually help people lose weight.

8.    With all the notoriety surrounding this new "miracle" diet pill, many dietary supplement manufacturers, including Defendants, exploited this

opportunity to make money off unassuming consumers, regardless of the scientific research refuting claims regarding the Product.

9.      As a result of Defendants' unfair, deceptive, fraudulent, and misleading practices, Plaintiff and Class Members were deceived into purchasing the Product they would not otherwise have purchased, denied the benefit of their bargain, or would have only purchased it at a substantially lower price than that charged by Defendants.

## **PARTIES**

10.     Plaintiff Kayden is a resident and citizen of Los Angeles County, California. Plaintiff purchased the Product several times between 2012 to 2015, from his local Sprouts Farmers Market and Amazon.com. Prior to purchase, Plaintiff read and relied on the false claims made by Defendants on the product packaging, the Defendants' website and in marketing materials authored and/or approved by the Defendants as more fully set forth in this Complaint.

11.     Defendant, Creative Bioscience Laboratories, LLC is a Utah limited liability company having a principal place of business located at 381 W. Ironwood Dr., S. Salt Lake City, UT 84115-2912.

12.     Defendant Creative Bioscience, LLC is a Utah limited liability company having a principal place of business located at 381 W. Ironwood Dr., S. Salt Lake City, UT 84115-2912.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the amount in controversy exceeds $5,000,000.00, exclusive of interests and costs, and many Members of the proposed Class are citizens of states different from that of the Defendants (who are domiciled and licensed in Utah and otherwise maintain their principal place of business in Utah).

14.    This Court has personal jurisdiction over Defendants because they conduct substantial business in this judicial district and division, and intentionally and purposefully directed the Product into the stream of commerce, including the sale and distribution of the Product, within the districts of California and throughout the United States.

15.    Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391 because Defendants have advertised in this district and division and received substantial revenues and profits from sales of its Product in this district and division; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred within this district and division.  Additionally, Plaintiff is a citizen of and resides within this District.

# FACTUAL ALLEGATIONS

16.    Defendants recklessly boast—and advertise—about the "efficacy" of the main active ingredient in the Product, ignoring the volume of scientific literature refuting the fat burning, weight loss, and appetite suppression claims attributed to Garcinia Cambogia.

17.    Upon information and belief, Defendants had access to, but knowingly and/or recklessly disregarded competent and reliable scientific evidence showing that the main active ingredient in the Product, Garcinia Cambogia/HCA does not provide the weight loss benefits the Defendants claim.

18.    Defendants made false claims regarding the efficacy of the Product in providing weight loss, weight management and inhibiting fat production.

19.    Defendants also knowingly and/or recklessly misrepresented the amount of HCA actually contained in the Product as compared to the Product's label and packaging.

### *The Product's False and/or Misleading Labeling and Marketing Claims Regarding Garcinia Cambogia*

20.    Defendants state the following false/misleading claims on the Product's label and/or website, as shown below:

a.    Contains 60% HCA (Hydroxycitric acid)

b.    Believed to reduce hunger by its appetite suppressant properties

c.    Use results in increased thermogenesis (fat oxidation)

d.    Controls cravings by boosting serotonin levels in your brain

e.    Could improve your mood and sleep quality



21.    All of Defendants' labeling and marketing claims regarding the Product are predicated on HCA's purported ability inhibit the extramitochondrial enzyme, adenosine triphosphate (ATP)-citrate-lyase.

### Why Defendants' Labeling and Marketing Claims are False and/or Misleading Regarding Garcinia Cambogia

### Appetite Suppression

22.    Since HCA reportedly promotes weight loss, in part, through suppression of hunger, a study was conducted to determine the effects of HCA on appetitive variables. In the study, the active treatment group did not exhibit better

dietary compliance or significant correlations between appetitive variables and energy intake or weight change. The study did not support a satiety effect of HCA.[1]

23.    The study revealed that a two-week supplementation with HCA alone, or in combination with medium chain triglycerides, did not result in increased satiety compared to a placebo, in subjects losing bodyweight.[2]

24.    A similar study was performed in order to assess the effects of two weeks of supplementation with HCA alone, or combined with medium-chain triglycerides, on satiety and energy intake. Two weeks of supplementation with HCA alone or combined with medium chain triglycerides did not result in increased satiety or decreased energy intake compared to placebo in subjects losing bodyweight.[3]

### Increased Metabolism, Fat Burning and Weight Loss

25.    As HCA is represented to be a potential anti-obesity agent, a randomized controlled trial was conducted to evaluate the efficacy of Garcinia

---

[1] Mattes R, Bormann L. Effects of (-)-hydroxycitric acid on appetitive variables. *Physiol Behav* 2000, 71:87-94.

[2] Kovacs E, Westerterp-Plantenga M, Saris W. The effects of 2-week ingestion of (--)-hydroxycitrate and (--)-hydroxycitrate combined with medium-chain triglycerides on satiety, fat oxidation, energy expenditure and body weight. *Int J Obes Relat Metab Disord* 2001a, 25:1087-94.

[3] Kovacs E, Westerterp-Plantenga M, de Vries M, Brouns F, Saris W. Effects of 2-week ingestion of (-)-hydroxycitrate and (-)-hydroxycitrate combined with medium-chain triglycerides on satiety and food intake. *Physiol Behav* 2001b, 74:543-9.

Cambogia for body weight and fat mass loss in overweight human subjects. Garcinia Cambogia failed to produce weight loss and fat mass loss beyond that observed with a placebo.[4]

26.    Another study was performed with the objective of determining the effect of HCA on marker substrates of altered metabolism, respiratory quotient ("RQ") and energy expenditure ("EE") in humans, following an overnight fast and during a bout of exercise. The question was whether supplementation with HCA would result in an increase in fat oxidation and metabolic rate, reflected by an increase in beta-hydroxybutyrate and EE and/or a decrease in RQ. In a fasted state and following three days of HCA treatment, RQ was not significantly lowered during rest or during exercise when compared with the placebo treatment. Treatment with HCA did not affect EE, either during rest or during moderately intense exercise. Furthermore, the blood substrates measured were not significantly different between treatment groups under the fasting conditions of this study. The results did not support the hypothesis that HCA alters the short-term rate of fat oxidation in the fasting state during rest or moderate exercise.[5]

_____

[4] Heymsfield S, Allison D, Basselli J, Pietrobelli A, Greenfield D, Nunez C. Garcinia cambogia (Hydroxycitric Acid) as a potential antiobestiy agent. *J Am Med Assoc* 1998, 280: 1596-1600.

[5] Kriketos A, Thompson H, Greene H, Hill J. (-)-Hydroxycitric acid does not affect energy expenditure and substrate oxidation in adult males in a post-absorptive state. *Int J Obes Relat Metab Disord* 1999, 23:867-73.

27.    A study determined the effects of 2-week ingestion of HCA alone or combined with medium-chain triglycerides on fat oxidation, energy expenditure and body weight. Two-week supplementation with HCA alone or in combination with medium chain triglycerides did not result in increased fat oxidation, 24 h EE or bodyweight loss compared to a placebo, in subjects losing bodyweight.[6]

28.    An additional study was conducted to assess the effects of acute HCA supplementation on substrate metabolism at rest and during exercise in humans. The study found that HCA, even when provided in large quantities, does not increase total fat oxidation in vivo in endurance-trained humans.[7]

29.    All of Defendants' claims regarding the Product and its ability to help with appetite control, fat burning and weight loss are false and/or misleading based upon the scientific literature and the dose of HCA contained in the Product.

---

[6] Kovacs E, Westerterp-Plantenga M, Saris W. The effects of 2-week ingestion of (--)-hydroxycitrate and (--)-hydroxycitrate combined with medium-chain triglycerides on satiety, fat oxidation, energy expenditure and body weight. *Int J Obes Relat Metab Disord* 2001a, 25:1087-94.

[7] van Loon L, van Rooijen J, Niesen B, Verhagen H, Saris W, Wagenmakers A. Effects of acute (-)-hydroxycitrate supplementation on substrate metabolism at rest and during exercise in humans. Am J Clin Nutr 2000, 72:1445-50.

***Defendants' Mislabeling of the Product by Under-Dosing the Main Active Ingredient, HCA***

30.     Defendants claim the Product contains 1500 mg of Garcinia Cambogia Extract per serving, with 60% concentration of HCA as illustrated in the photograph in paragraph 20, *supra*.

31.     However, according to lab results, commissioned by Plaintiff's attorneys, the Product only contains roughly 11.5% of the claimed HCA,[8] or 104 mg per serving:

**Table 1 – Results CDXA-17-003739**

| Analyte | Units | Spec. | Result | Reporting Limit |
|---|---|---|---|---|
| Hydroxycitric Acid Free** | mg/serving | NA | 104 | -- |
| Hydroxycitric Acid Lactone | mg/serving | NA | ND | 31 |
| **Total Hydroxycitric Acid** | mg/serving | 1500 | 104 | -- |
| Average Capsule Weight Serving Size: 2 capsule | mg | | 789 | |

32.     Defendants' clear mislabeling of the Product renders it misbranded.

33.     Plaintiff and Class Members were, in fact, misled by Defendants' misrepresentations regarding the true nature of the Product ingredients and its value for the purposes of weight loss.

34.     The difference between the Product as promised and the Product sold is significant. Furthermore, even if the Product were to contain the advertised

---

[8] The Product label has the express claim of "60% hydroxycitric acid," which equals 900 mg of claimed HCA.

amount of HCA, the efficacy of the Product (or more accurately, the lack of efficacy) diminishes any purported benefits provided to consumers and the actual value of the Product itself.

35.    Defendants' deceptive statements violate the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 343(a)(1), which deems food (including nutritional supplements) misbranded when the label contains a statement that is "false or misleading in any particular."

36.    The introduction of misbranded food into interstate commerce is prohibited under the FDCA.

37.    Plaintiff and Class Members would not have purchased the Product or would have paid less for the Product if they were aware of the misleading labeling of the Product by Defendants.

## CLASS ACTION ALLEGATIONS

38.    Plaintiff brings this class action on behalf of himself and all others similarly situated as Class Members pursuant to Rule 23 of the Federal Rules of Civil Procedure.

39.    Plaintiff seeks to represent a Nationwide Class defined as follows:

**National Class:**

All persons in the United States who purchased Defendants' Product for fat burning, weight loss, and/or appetite suppression within the last ten years prior to the filing of the Complaint.

40.    In the alternative, Plaintiff brings this action on behalf of the following State Class:

**California Class:**

> All persons residing in the State of California who purchased Defendants' Product for fat burning, weight loss, and/or appetite suppression within the last ten years prior to the filing of the Complaint.

Excluded from the Classes are: Defendants and their subsidiaries and affiliates; all persons who make a timely election to be excluded from the Classes; all governmental entities; and the Judge to whom this case is assigned and any immediate family members thereof.

41.    Certification of the Plaintiff's claims for class wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

42.    **Numerosity – Fed. R. Civ. P. 23(a)(1).** The Members of the Classes are so numerous that individual joinder of all Class Members in impracticable. On information and belief, there are thousands of consumers who have been affected by the Defendants' wrongful conduct. The precise number of the Class Members and their addresses is presently unknown to Plaintiff, but may be ascertained from the Defendants' books and records. Class Members may be notified of the

pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

43.    **Commonality and Predominance – Fed. R. Civ. P. 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members, including, without limitation:

a) Whether the Product, when used by consumers in a normal and customary manner and/or in accordance with its suggested use, works as advertised, marketed, and conveyed by Defendants to consumers;

b) Whether, in the course of business, Defendants represented that the Product has characteristics, uses, benefits, or qualities that it does not have when used by consumers in a normal and customary manner and/or in accordance with its suggested use;

c) Whether the claims Defendants made and are making regarding the Product are unfair or deceptive; specifically, whether the Product provides fat burning, weight loss and/or appetite suppression properties to consumers.

d) Whether Defendants knew at the time the consumer transactions took place that consumers would not receive the promised benefits of the Product that Defendants claimed they would receive;

e) Whether Defendants knowingly made misleading statements in connection with consumer transactions that consumers were likely to rely upon to their detriment;

f) Whether Defendants knew or should have known that the representations and advertisements regarding the Product were unsubstantiated, false, and misleading;

g) Whether Defendants breached express and implied warranties in the sale and marketing of the Product;

h) Whether Defendants' acts and omissions violated consumer protection statutes;

i) Whether Defendants have been unjustly enriched by the sale of the Product to the Plaintiff and the Class Members;

j) Whether Plaintiff and Class Members received the benefit of their bargain when purchasing the Product;

k) Whether the Plaintiff and the Class Members suffered monetary damages, and, if so, what is the measure of those damages;

l) Whether Plaintiff and the Class Members are entitled to an injunction, restitution, equitable relief, and other relief deemed appropriate, and, if so, the amount and nature of such relief.

44.    **Typicality – Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the other Class Members' claims because, among other things, all Class Members were similarly injured through the uniform and common misconduct described above.

45.    **Adequacy of Representation – Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the other Class Members he seeks to represent; he has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The Class Members' interests will be fairly and adequately protected by Plaintiff and his counsel.

46.    **Declaratory and Injunctive Relief – Fed. R. Civ. P. 23(b)(2).** Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to Class Members as a whole.

47.    **Superiority – Fed. R. Civ. P. 23(b)(3)**. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class Members to individually seek redress from Defendants' wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

# CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF

### Breach of Express Warranty
### (On behalf of Plaintiff and the Nationwide Class, Or Alternatively, the California Class)

48.    Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

49.    Plaintiff and Class Members contracted with Defendants at the time Plaintiff and the other Class Members purchased the Product. The terms of the contract include the promises and affirmations of fact made by Defendants on the Product's packaging and through marketing and advertising, as described above. This labeling, marketing and advertising constitute express warranties and became part of the basis of bargain, and are part of the standardized contract between Plaintiff, Class Members and Defendants.

50.    Defendants statements contained in advertising, labeling, marketing and packaging for the Product create an express warranty that the Product was effective at providing fat burning, weight loss, and/or appetite suppression.

51.    Plaintiff and Class Members performed all conditions precedent to Defendants' liability under this contract when they purchased the Product.

52.    Defendants breached express warranties about the Product and its qualities because the statements about the Product were false because it does not

conform to Defendants' statements and promises described above. Plaintiff and Class Members would not have purchased the Product had they known the true nature of the Product's ingredients, what the Product actually contained and the lack of efficacy for its claimed benefits.

53.    Defendants received timely notice regarding the problems at issue in this litigation through various means including the studies described in paragraphs 25 through 28, *supra*. Notwithstanding such notice, Defendants failed and refused to offer an effective Product.

54.    As a result of Defendants' breach of warranty, Plaintiff and Class Members have been damaged in the amount of the purchase price of the Product and any consequential damages resulting from the purchases.

## SECOND CLAIM FOR RELIEF

**Breach of Implied Warranty of Merchantability
(On Behalf of Plaintiff and the Nationwide Class, Or Alternatively, the
California Class)**

55.    Plaintiff re-alleges and incorporate the preceding paragraphs as if fully set forth herein.

56.    Defendants are and were at all relevant times merchants with respect to the Product.

57.    A warranty that the Product was in merchantable quality and condition is implied by law pursuant to Cal. Civ. Code § 1791.1.

58.    Defendants impliedly warranted that the Product was of good and merchantable condition and quality – fit and safe for its ordinary intended us and that the Product conformed to the promises or affirmations of fact made on the container or label, specifically, that it contained 1500 mg of Garcinia Cambogia Extract per serving, with 60% concentration of HCA, and that the Product stimulated weight loss and appetite suppression.

59.    The Product was defective and mislabeled at the time it left the possession of Defendants, as set forth above, and Defendants knew of the defect/mislabeling at that time. Thus, the Product, when sold and at all times thereafter, was not in merchantable condition or quality and is not fit for its ordinary intended purpose of providing consumers with benefits of fat burning, weight loss, and/or appetite suppression.

60.    By virtue of the conduct described herein and throughout this Complaint, Defendants breached the implied warranty of merchantability.

61.    Plaintiff and Class Members have been damaged as a direct and proximate result of Defendants' breach of the implied warranty.

62.    Plaintiff and Class Members used the Product in a manner consistent with its intended use and performed each and every duty required under the terms

of the warranties, except as may have been excused or prevented by the conduct of Defendants or by operation of law in light of Defendants' conduct.

63.    Defendants received timely notice regarding the problems at issue in this litigation through various means including the studies described *supra*. Notwithstanding such notice, Defendants failed and refused to offer an effective Product.

64.    As a direct and proximate result of Defendants' breach of warranties, Plaintiff and the Class were caused to suffer damages.

## <u>THIRD CLAIM FOR RELIEF</u>

**Unjust Enrichment**
**(On behalf of Plaintiff and the Nationwide Class)**

65.    Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

66.    This alternative claim is asserted on behalf of Plaintiff and Class members to the extent there is any determination that any contracts between Class members and Defendants do not govern the subject matter of the disputes with Defendants, or that Plaintiff does not have standing to assert any contractual claims against Defendants.

67.    Plaintiff and Class members conferred a benefit on Defendants, and Defendants had knowledge of this benefit. By their wrongful acts and omissions

described herein, including selling the defective Product, Defendants were unjustly enriched at the expense of Plaintiff and Class members.

68.     Plaintiff's and Class members' detriment and Defendants' enrichment were related to and flowed from the wrongful conduct alleged in this Complaint.

69.     It would be inequitable for Defendants to retain the profits, benefits, and other compensation obtained from their wrongful conduct as described herein in connection with selling the Product.

70.     Plaintiff and Class members seek restitution from Defendants and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from its wrongful conduct, and establishing a constructive trust from which Plaintiff and Class members may seek restitution.

## FOURTH CLAIM FOR RELIEF

### Violation of Consumer Legal Remedies Act ("CLRA")
### (On Behalf of Plaintiff and the California Class)

71.     Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

72.     Defendants both fall within the definition of "person" as defined by the CLRA. Cal. Civ. Code Sec. 1761(c).

73. Plaintiff and Class members are "consumers" within the meaning of the CLRA, as defined by Cal. Civ. Code Sec. 1761(d), who purchased one or more quantities of The Product.

74. The CLRA prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code Sec. 1770(a).

75. Defendants have engaged in unfair or deceptive trade practices that violated Cal Civ. Code Sec. 1770(a), as described above and below, by, among other things, failing to disclose the defective nature of the Product, representing that the Product had characteristics and benefits that they do not have (e.g. that it contains 900 mg of HCA when in fact it only contains 104 mg of HCA; representing that the product stimulates weight loss and appetite suppression), representing that the Product is of a particular standard, quality, or grade when it is of another, and advertising the Product with the intent not to sell it as advertised. Cal. Civ. Code Sections 1770(a)(5), (a)(7), (a)(9).

76. Defendants knew, should have known, or were reckless in not knowing that their products did not have the qualities, characteristics, and functions it represented, warranted, and advertised them to have.

77. Plaintiff and Class members are reasonable consumers who expected that the Product would work as represented.

78.    As a result of Defendants' conduct and unfair or deceptive acts or practices, Plaintiff and Class members suffered actual damages in that the Product does not function as represented and is not worth the amount paid and Defendants have deprived Plaintiff and Class members the benefit of the bargain.

79.    Plaintiff and the Class seek an order enjoining Defendants' unfair or deceptive acts or practices, equitable relief, an award of attorneys' fees and costs under Cal. Civ. Code Sec. 1780(e).

80.    In compliance with the provisions of California Civil Code § 1782, Plaintiff notified Defendants in writing of the particular violations of § 1770 of the Act and demanded Defendants to rectify the actions described above by refunding the purchase price and give notice to all affected consumers of their intent to do so. Plaintiff sent this notice by certified mail, return receipt requested, to Defendants' principal place of business.

81.    Defendants failed to adequately respond to Plaintiff's demand to rectify the wrongful conduct described above on behalf of all Class members within thirty days after receipt of the § 1782 notice, through this complaint Plaintiff seeks actual and punitive damages against Defendants for violations of the CLRA on behalf of himself and the California Class.

## FIFTH CLAIM FOR RELIEF

**Violation of California Unfair Competition Law ("UCL")**
**(On Behalf of Plaintiff and the California Class)**

82.    Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

83.    The UCL, California Business & Professions Code § 17200, prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Defendants' conduct related to the sale of the defective Product violated each of this statute's three prongs.

84.    Defendants committed an unlawful business act or practice in violation of Cal. Bus. & Prof. Code § 17200, et seq., by their violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq., as set forth above, by the acts and practices set forth in this Complaint.

85.    Defendants committed unfair business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, et seq., when they sold the Product that contained far less of the active ingredient HCA than the Product's packaging and marketing materials indicated.

86.    Defendants committed fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, et seq., when they affirmatively and knowingly misrepresented that the Product contained 1500 mg of Garcinia Cambogia Extract per serving, with 60% concentration of HCA when in fact it only contained 104 mg of HCA, and when they claimed that the Product

successfully stimulated weight loss and appetite suppression. Defendants' representations and concealment of the defect are likely to mislead the public with regard to the true nature of the Product.

87.    As a direct and proximate result of Defendants' unfair and deceptive practices, Plaintiff and Class members suffered and will continue to suffer actual damages.

88.    As a result of its unfair and deceptive conduct, Defendants have been unjustly enriched and should be required to disgorge their unjust profits and make restitution to Plaintiff and Class members pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17204.

89.    Legal remedies alone will be insufficient to fully redress Plaintiff's injuries and stop Defendants from continuing in their unfair and deceptive conduct. Therefore, Plaintiff and the Class seek equitable relief, including an order enjoining Defendants' unfair or deceptive acts or practices, and an award of attorneys' fees and costs under Cal. Code of Civ. Proc. § 1021.5.

## SIXTH CLAIM FOR RELIEF

**Violation of California False Advertising Law ("FAL")**
**(On Behalf of Plaintiff and the California Class)**

90.    Plaintiff realleges and incorporates, as if fully alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint, and further alleges as follows.

91.    The FAL, California Business & Professional Code § 17500, *et seq.*, prohibits false advertising.

92.    Defendants are "person(s)" as defined under Cal. Bus. & Prof. Code § 17506.

93.    Defendants falsely advertised the performance, uses, benefits, characteristics, quality, grade and standard of the Product by omission and misrepresentation as alleged herein.

94.    At all material times, Defendants held the Product as containing 1500 mg of Garcinia Cambogia Extract per serving, with 60% concentration of HCA when in fact it contained only 104 mg of HCA, and further falsely represented that the Product was effective at stimulating weight loss and appetite suppression.

95.    Defendants' advertisement of the Product misrepresented and/or omitted the true nature of the chemical composition of the Product. These advertisements were made to consumers located within the State of California, and come within the definition of advertising as contained in California Business and Professional Code §§ 17500, *et seq.*, in that they were intended as inducements to purchase items from Defendants and are statements disseminated by Defendants to Plaintiff and Class Members. In the exercise of reasonable care, Defendants should have known that the statements regarding the HCA content of the Product were false, misleading, deceptive and violated California law.

96.    Defendants have prepared and disseminated information and advertising within the State of California that the Product as contains 1500 mg of Garcinia Cambogia Extract per serving, with 60% concentration of HCA when in fact it contains only 104 mg of HCA. Plaintiff and Class Members necessarily and reasonably relied on Defendants' statements regarding the quality of its items, and all were exposed to such statements. Plaintiff and Class Members were among the intended targets of Defendants' misrepresentations.

97.    Defendants disseminated misleading and deceptive statements throughout the State of California and including Plaintiff and Class Members, which were and are likely to deceive reasonable consumers by obfuscating the true nature of HCA content of the Product, thus violating California Business and Professional Code §§ 17500, *et seq.*

98.    Plaintiff and Class Members who purchased the Product from Defendants suffered substantial injury. Had they known that Defendants' materials, advertisements, other inducements misrepresented or omitted the true nature of Defendants' Product, they would not have purchased the Product from Defendants or would have paid less for it.

99.    Plaintiff and Class Members seek injunctive relief prohibiting Defendants from continuing the unlawful practices alleged herein, directing Defendants to make corrective notices on its website and in other appropriate

media, allowing members of the proposed Class to return any Product purchased from Defendants, at Defendants' expense, and any other relief deemed proper by the Court.

## SEVENTH CLAIM FOR RELIEF

### Declaratory Relief Under the Declaratory Judgment Act
### (On Behalf Of The Nationwide Class Or, Alternatively, the California Class)

100.    Plaintiff incorporates the allegations set forth above as if fully set forth herein.

101.    Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2751 (3d ed. 1998).

102.    Pursuant to 28 U.S.C. § 2201, *et seq.*, there is an actual controversy between Defendants and Plaintiff concerning whether:

a) Defendants has misrepresented the effectiveness of the Product; and

b) Defendants knew or should have known of the misrepresentations regarding the efficacy of the Product.

103.    Pursuant to 28 U.S.C. § 2201, the Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

104.   Despite the studies which have proven Defendants' representations false, Defendants continue to misrepresent the effectiveness of the Product, and have otherwise failed to correct those misrepresentations.

105.   Accordingly, based on Defendants' repeated and continued misrepresentations, Plaintiff seeks a declaration that Defendants have misrepresented the efficacy of the Product and that their actions are unlawful.

106.   The declaratory relief requested herein will generate common answers that will settle the controversy related to the misrepresented labeling of the Product. There is an economy to resolving these issues as they have the potential to eliminate the need for continued and repeated litigation.

### PRAYER FOR RELIEF

Wherefore, Plaintiff, John Kayden, on behalf of himself and all others similarly situated, respectfully requests that the Court enter an Order awarding the following relief:

A. Declaring that this action may be maintained as a class action, certifying the Classes as requested herein, appointing Plaintiff as Class Representative, and appointing the undersigned as Class Counsel;

B. Enjoining Defendants from the unlawful practices and statutory violations asserted herein;

C. Declaring Defendants' practices to be unlawful;

D. A judgment awarding Plaintiff and each of the other Members of the Classes their actual damages in an amount according to proof as to Defendants' unlawful conduct, as alleged herein;

E. A judgment awarding Plaintiff and each of the other Members of the Classes compensatory, consequential, and special damages in amounts to be proven at trial, as well as statutory damages;

F. An award of punitive damages, to the maximum extent permitted by law;

G. A judgment awarding Plaintiff and the other members of the Classes restitution, including, without limitation, disgorgement of all profits and unjust enrichment obtained by Defendants as a result of its wrongful conduct, as alleged herein;

H. An award of delay damages, to the maximum extent permitted by law;

I. Attorneys' fees, expenses, and the costs of this action to the maximum extent permitted by law;

J. An award of pre- and post-judgment interest; and

K. All other and further relief that the Court deems necessary, just, and proper.

# JURY DEMAND

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiff, John Kayden, hereby demands a trial by jury of all claims in this Class Action Complaint so triable.

Date: June 12, 2018                           Respectfully submitted,

/s/ Jonathan Shub

Jonathan Shub (CA Bar #237708)
Kevin Laukaitis*
**KOHN, SWIFT & GRAF, P.C.**
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Tel: (215) 238-1700
Fax: (215) 238-1968
Email: jshub@kohnswift.com
klaukaitis@kohnswift.com

Gregory F. Coleman*
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Telephone: (865) 247-0080
Facsimile: (865) 533-0049
Email: greg@gregcolemanlaw.com

Nick Suciu III*
**BARBAT, MANSOUR & SUCIU PLLC**
1644 Bracken Rd.
Bloomfield Hills, MI 48302
Tel: (313) 303-3472
Fax: (248) 698-8634
Email: nicksuciu@bmslawyers.com

*Attorneys for Plaintiff and the Class*
*\*Pro Hac Vice forthcoming*